1   R. Rex Parris, Esq. (SBN 96567)
        rrparris@rexparris.com
2   Alexander R. Wheeler, Esq. (SBN 239541)
        awheeler@rrexparris.com
3   Kitty Szeto, Esq. (SBN 258136)
        kszeto@rrexparris.com
4   John M. Bickford, Esq. (SBN 280929)
        jbickford@rrexparris.com
5   **R. REX PARRIS LAW FIRM**
    43364 10th Street West
6   Lancaster, California 93534
    Telephone:   (661) 949-2595
7   Facsimile:    (661) 949-7524

8   Attorneys for Plaintiffs and the Putative Class

9

10

11              **UNITED STATES DISTRICT COURT**

12           **CENTRAL DISTRICT OF CALIFORNIA**

13

14   JENNIFER VAGLE and GEORGE          ) Fed. Case No.  2:14-cv-03476-RGK-AJW
     PONCE, on behalf of themselves and all ) State Case No.  BC480931
15   others similarly situated;            )
                                           ) **CLASS ACTION**
16              Plaintiffs,               )
                                           ) **PLAINTIFFS' NOTICE OF MOTION AND**
17        v.                              ) **MOTION TO REMAND;**
                                           ) **MEMORANDUM OF POINTS AND**
18   ARCHSTONE COMMUNITIES, LLC, a        ) **AUTHORITIES**
     Delaware limited liability corporation, )
19   ASN WARNER CENTER, LLC, a            ) [Filed Concurrently with [Proposed] Order;
     Delaware limited liability corporation, ) Request for Judicial Notice; and Declaration of
20   and ARCHSTONE LONG BEACH, LP,        ) John M. Bickford]
     a Delaware limited partnership, and   )
21   DOES 1 through 100, inclusive;        ) Date:        June 23, 2014
                                           ) Time:        9:00 a.m.
22              Defendants.               ) Courtroom:   850
                                           ) Judge:       Hon. R. Gary Klausner
23                                        )
                                           ) Jury Trial Date:   None Set
24                                        ) Complaint Filed:  March 14, 2012
                                           )
25                                        )
                                           )
26   _____ )

27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on June 23, 2014 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable R. Gary Klausner in Courtroom 850 of the United States District Court for the Central District of California, Western Division, located at 255 East Temple Street, Los Angeles, California, 90012-1565, Plaintiffs Jennifer Vagle and George Ponce ("Plaintiffs") will and hereby move the Court for an order remanding this case back to the Superior Court of the State of California for the County of Los Angeles.  This motion is made upon the grounds that Defendant Archstone Communities, LLC ("Archstone Communities") has waived its right to remove.  *See* 28 U.S.C. § 1446(b).

Additionally, because Archstone Communities lacked an objectively reasonable basis supporting its removal, Plaintiffs request this court to award them $12,501.16 in attorneys' fees and costs, which was incurred as a result of Archstone Communities' removal.

This motion is made following the conference of counsel pursuant to L.R. 7.3 which took place on May 7, 2014 and continued to the filing of this motion.  It is based upon this Notice, Memorandum of Point and Authorities, and the Declaration of John M. Bickford, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Federal Rules of Evidence 201, and such other and further evidence and arguments as may be presented to the Court in support thereof at or before the hearing on this Motion.

Date:  May 23, 2014                    **R. REX PARRIS LAW FIRM**


                                       By:  /s/ John M. Bickford
                                            John M. Bickford

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY .......................................1

    A.   Plaintiff Vagle's Experience at Archstone Warner Center.....................1

    B.   The Original Complaint..........................................................2

    C.   The Demurrer to the Original Complaint. ...................................2

    D.   The First Amended Complaint. ...............................................3

    E.   The Demurrer to Plaintiff Vagle's First Amended Complaint...............3

    F.   Plaintiff Vagle's Second Amended Complaint ..............................4

    G.   The Court's Orders Limited Discovery. ......................................5

    H.   Plaintiff Conducts Limited Discovery and Moves For
        Leave to Amend to Add Archstone Communities, LLC. ........................5

    I.   Plaintiffs' Third and Fourth Complaints.....................................6

    J.   Archstone Long Beach Removes to Federal Court and
        This Court Grants Plaintiff's Motion to Remand ..................................7

    L.   The Day After the State Court Recognizes the Remand, Archstone
        Communities Re-Removes This Case to Federal Court. ..........................9

III.   LEGAL STANDARDS UNDER CAFA. ..........................................9

IV.    ARGUMENT..........................................................................10

    A.   Archstone Communities Has Repeatedly Waived Its
        Right to Remove This Two-Year Old Case to Federal Court.................10

        1.   Communities Waived Its Right to Remove by Not
            Doing So Within 30-Days of Being Served With
            Plaintiff Vagle's First and Third Amended Complaints.**...................11**

        2.   Archstone Waived Its Right to Remove By Not
            Removing Within 30-Days of Receiving Chris Jenkins'
            First Declaration.**..........................................................14**

i

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

3.   Archstone Communities Waived Its Right to Remove
By Not Removing When Archstone Long Beach Did **.......................16**

4.   Archstone Communities Waived Its Right to
Remove by Not Removing Within 30-Days of
This Court's Previous Remand Order**...................................17**

**B.   Archstone Communities' Data Points Are Not Supported
by Competent Proof.** ...................................................17

**C.   The Court Should Award Plaintiffs the Fees and Costs
Associated with Archstone Communities Frivolous Removal.**...............20

**IV.   CONCLUSION** ...................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Abrego Abrego v. The Dow Chem. Co.,*
   443 F.3d 676 (9th Cir. 2006)................................................................9, 10, 18

*Amoche v. Guarantee Trust Life Ins. Co.,*
   556 F.3d 41 (1st Cir. 2009) ...........................................................................19

*Banta v. American Medical Response Inc.,*
   No. CV 11–03586 GAF (RZx), 2011 WL 2837642
   (C.D. Cal. July 15, 2011)...........................................................................13, 14

*Benson v. SI Handling Systems, Inc.,*
   188 F.3d 780 (7th Cir. 1999)..........................................................................16

*Duncan v. Stuetzle,*
   76 F.3d 1480 (9th Cir. 1996)............................................................................9

*Garibay v. Archstone Communities LLC,*
   539 Fed App'x 763 (9th Cir. 2013)................................................................18

*Gaus v. Miles, Inc.,*
   980 F.2d 564 (9th Cir. 1992)...........................................................10, 18, 19

*Green v. Staples Contract & Commercial, Inc.*
   No. CV08-7138 SVWJWJX, 2008 WL 5246051
   (C.D. Cal. Dec. 10, 2008)........................................................................18, 19

*Guglielmino v. McKee Food Corp.,*
   506 F.3d 696 (9th Cir. 2007).........................................................................17

*Harris v. Bankers Life & Cas. Co.,*
   425 F.3d 689 (9th Cir. 2005)..........................................................................12

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 357 (1994) .........................................................................................9

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Libby v. City Nat'l Bank,*
  592 F.2d 504 (9th Cir.1978)............................................................................8

*Lowdermilk v. U.S. Nat'l Ass'n,*
  479 F.3d 994 (9th Cir. 2007)...........................................................10, 17, 19, 20

*Lozano v. GPE Controls,*
  859 F.Supp. 1036 (S.D. Tex 1994) ...............................................................15

*MacLeod v. Dalkon Shield Claimants Trust,*
  886 F. Supp. 16 (D. Or. 1995).......................................................................17

*Martin v. Franklin Capital Corp.,*
  546 U.S. 132 (2005) ......................................................................................20

*One Sylvan Rd. N. Assocs. v. Lark Int'l, Ltd.,*
  889 F. Supp. 60 (D. Conn. 1995) .............................................................16, 17

*Roberson v. Orkin Exterminating Co.,*
  770 F.Supp. 1324 (N.D. Ind.1991)................................................................11

*Rodriguez v. AT&T Mobility Servs. LLC,*
  728 F.3d 975 (Aug. 27, 2013) .......................................................................10

*Roth v. CHA Hollywood Med. Ctr., L.P.,*
  720 F.3d 1121 (9th Cir. 2013).................................10, 11, 12, 13, 14, 15, 16

*Rynearson v. Motricity, Inc.,*
  626 F.Supp.2d 1093 (W.D. Wash. 2009) .....................................................15

*Sanchez v. Monumental Life Ins. Co.,*
  102 F.3d 398 (9th Cir. 1996).......................................................................17

*Seedman v. United States District Court for the Central District of California,*
  837 F.2d 413 (9th Cir. 1988).........................................................................17

iv

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 ...................................................................................9

*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002) .........................................................................10

*Sys. Design Solutions Inc. v. Watch Sys. LLC*,
  No. CV 09-6871 PA (PJWx), 2009 WL 3245813
  (C.D. Cal. Oct. 7, 2009) .................................................................16

*Tanoh v. Dow Chem. Co.*,
  561 F.3d 945 (9th Cir. 2009) ..........................................................10

*Trang Nguyen v. Nordstrom, Inc.*,
  No. SACV 11–01334 DDP (MLGx), 2012 WL 1956905
  (C.D. Cal. May 30, 2012) ...........................................................18, 19

*Vagle v. Archstone Communities, LLC*,
  No. CV 13–09044 RGK (AJWx), 2014 WL 463532
  (C.D. Cal. Feb. 5, 2014) ...................................................................8

*Valdez v. Allstate Ins. Co.*,
  372 F.3d 1115 (9th Cir. 2004) ........................................................18

**Statutes**

28 U.S.C. § 1332(d)(5)(B) ....................................................................10

28 U.S.C. § 1441 ....................................................................................9

28 U.S.C. § 1446(b)(1)..........................................................................10

28 U.S.C. § 1446(b)(3)................................................................10, 12, 15

28 U.S.C. §1447(c) ...............................................................................20

Cal. Civil Code § 1950.5...............................................................1, 2, 11

v

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

And we're back!  For the second time in only five months, this case has been removed to federal court by a group of defendants desperately trying to avoid further litigating this two-year old case in state court.  Last time, we saw Archstone Long Beach try to remove this case.  This time, Archstone Communities is giving it a try.  But unlike Archstone Long Beach—who was only recently been added to this case—Archstone Communities has been a defendant in this case as far back as August 22, 2012 and could have removed as soon as it was initially served with Plaintiff Vagle's First Amended Complaint.  Worse yet, Archstone Communities' current removal is based on the ***same*** facts that Archstone Long Beach used to support its removal.  The only difference now is that it's a different party removing.  But the facts show that Archstone Communities has long been in the possession of the information it is currently using to support its removal.  Accordingly, Archstone Communities has waived its right to remove, and the Court should again grant Plaintiffs' motion to remand.

## II.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

### A.   <u>Plaintiff Vagle's Experience at Archstone Warner Center.</u>

From 2009 to 2010, Plaintiff Vagle leased an apartment at a complex called Archstone Warner Center, which was owned by Defendant ASN Warner Center, LLC.  *See* Fourth Amended Complaint at ¶ 18.  As a condition of her tenancy, Plaintiff Vagle was required to pay an $849.00 security deposit, *id.* at ¶ 19, which, under California Civil Code section 1950.5 would be returned to her if she left her unit clean and in the same condition it was at the inception of her tenancy, subject to reasonable wear and tear.  Although Plaintiff Vagle fully complied with this requirement, *id.* at ¶ 20, the complex still withheld $80.00 for apartment cleaning, $60 for carpet cleaning, and $142.27 for painting from her security deposit at the end of her tenancy, *id.* at ¶ 21.

After she was charged, Plaintiff spoke with other ex-tenants who leased apartments from other Archstone apartment complexes.  Fourth Amended Complaint at ¶ 22.  Each ex-

1

tenant told her that they had also been charged for cleaning and painting at the end of their tenancies even though they left their apartments clean and in the same condition they were when they moved in.  *Id.*  Plaintiff also searched the internet for online reviews and discovered that most—if not all—of the Archstone apartment complexes in California have negative reviews left by ex-tenants claiming that they were also charged similar cleaning and painting fees.  See, e.g., *id.* at ¶ 30.

### B.   The Original Complaint.

Based on these facts, Plaintiff Vagle filed this putative class action on March 14, 2012, alleging that the Archstone apartment complexes in California have a systematic policy and procedure of always charging their tenants for cleaning, painting, and carpet cleaning at the end of every tenancy, regardless of the actual condition of the apartment unit in violation of California Civil Code section 1950.5 and the complexes' standardized leases. *See* Compl. at ¶ 16 (Ex. A).  Because her allegations concerned each of the approximately 70 Archstone apartment complexes in California, Plaintiff Vagle named as the defendants four Archstone entities she believed were responsible for the state-wide systematic policy and procedure:  (1) Archstone Builders Incorporated; (2) Archstone Property Management (California) Incorporated; (3) Smith Four, Inc. d/b/a Archstone-Smith Four, Inc.; and (4) Smith Two, Inc. d/b/a Archstone-Smith Two, Inc.  This allegation was based on the fact that these four Archstone entities were the only Archstone entities in California that did not appear to be the direct owner of an actual apartment complex, and therefore were the only entities that could be legally responsible for the alleged statewide policy.

Pursuant to these allegations, the Complaint alleged six causes of action:  (1) Violations of Civil Code section 1950.5; (2) Breach of Contract; (3) Unjust Enrichment; (4) Fraud—Intentional Misrepresentation; (5) Fraud—Concealment; and (6) Violations of Business and Professions Code sections 17200 et seq. *See* Compl. at ¶¶ 23–56.

### C.   The Demurrer to the Original Complaint.

On April 16, 2012, the four defendants filed a joint demurrer alleging, among other things, that they could not be liable for any of Plaintiff Vagle's causes of action because her

2

lease indicated that ASN Warner Center, LLC was her landlord, and therefore the only proper party to sue.  On August 8, 2012, the state court partially agreed and sustained their demurrer, noting that the lease "clearly shows that [Plaintiff Vagle's] tenant-landlord relationship was with ASN Warner Center LLC."  Order (Aug. 8, 2012) (Ex. B).  The court went on to add that Plaintiff Vagle will "need to either drop the current defendants or expand upon the present pleading if she hopes to assert a valid basis for holding these defendants liable for ASN Warner Center LLC's conduct as landlord."  *Id.*  During the hearing, the court explained how Plaintiff Vagle might be able to do this:

> [I]n the running of real estate . . . a management company may have substantial responsibility for what happens day-to-day in a property[.  S]o if somebody slips [on a banana peel], you may . . . sue the owner of the fee simple, but you may also choose to sue the owner of the management company, who [failed] to get the banana peel up in a timely fashion. . . .  That's to say different people will have different interests in a piece of real estate, but they may not [sic] bona fide, separate defendants or co-defendants.

Reporter's Transcript at 5:24–6:14 (Aug. 8, 2012) (Ex. C).

## D.   The First Amended Complaint.

On August 22, 2012, Plaintiff Vagle filed a First Amended Complaint ("FAC").  In addition to adding Archstone Communities, LLC as a defendant, Plaintiff's FAC contained additional theories of liability that attempted to render the now-five defendants liable for the systematic policy and procedure of always charging its tenants for cleaning and painting at the end of every tenancy.  FAC at ¶¶ 14–16 (Ex. D).  Additionally, the FAC removed the breach of contract and fraud causes of action, thereby reducing the number of causes of action alleged from six to the following three:  (1) Violations of Civil Code section 1950.5; (2) Unjust Enrichment; and (3) Violations of Business and Professions Code sections 17200 et seq. *See id.* at ¶¶ 39–53.

## E.   The Demurrer to Plaintiff Vagle's First Amended Complaint.

On September 28, 2012, the five defendants filed another demurrer, again alleging that all of Plaintiff's Vagle's causes of action fail because she didn't name ASN Warner

3

Center, LLC as the sole defendant.  On October 23, 2012, the court again sustained the defendants' demurrer, this time because "Plaintiff's factual showing in opposition to the motion in support of the claim that each of these defendants is co-liable is basically an assertion that if she were allowed discovery, the proof might be had."  Order (Oct. 23, 2012) (Ex. E).  The court explained that Plaintiff Vagle should name ASN Warner Center, LLC as the sole defendant and then

> take discovery from ASN Warner Center, LLC as to the extent to which its affairs are controlled by others if that is the truth or if they're not controlled by others to see what the facts are.  And if the affairs of that defendant are controlled by others where there is a real economic intertwining notwithstanding the representation made in support of the motion before the court today, then we'll see where that takes us, including the theoretical possibility that some of the currently named defendants might [be] appropriately be pulled back into the case when there's a factual basis for doing so.

Reporter's Transcript at 5:24–6:14 (Oct. 23, 2012) (Ex. F); *see also id.* at 9:2–12, 12:13–15, 13:21–14:22.  The court also noted that it didn't agree with the five defendants' claim that ASN Warner Center, LLC was the *only* proper defendant to sue because it was the legal owner of Archstone Warner Center.  It explained, "[O]nce you have a management company touching multiple units there could well be a reason to blame the management company for how the security deposits are handled, even if they are truly different ownerships of [the apartment complexes]."  *Id.* at 11:9–14; *see also id.* at 15:6–15.

**F.**    **Plaintiff Vagle's Second Amended Complaint**

On October 25, 2012, Plaintiff Vagle filed a Second Amended Complaint ("SAC"), naming ASN Warner Center, LLC as the sole defendant; however, she still alleged "that the ARCHSTONE DOES, either directly or through corporate affiliates, have been engaged in the business of owning, developing, managing, maintaining, and leasing approximately 70 multi-unit apartment complexes throughout the State of California, including but not limited to the premises allegedly owned by Defendant ASN WARNER CENTER, LLC, rendering

4

them legally responsible for the events and happenings referred to in this Second Amended Complaint." SAC at ¶ 8 (Ex. G). Defendant again demurred, which the court overruled on December 20, 2012. *See* Order (Dec. 22, 2012) (Ex. H).

### G. The Court's Orders Limited Discovery.

Also on December 20, 2012, the court lifted the stay on discovery, but limited discovery to the following three topics relating to whether or not the ARCHSTONE DOES are legally responsible for the acts alleged in the SAC:

- Plaintiff Vagle's individual claims asserted in this case, *see* Reporter's Transcript at 13:23–24 (Dec. 20, 2012) (Ex. I);
- ASN Warner Center, LLC's organizational structure and relationship to other Archstone entities, *id.* at 15:15–28; and
- ASN Warner Center, LLC's policies and procedures regarding the "day-to-day management of the obtaining and refunding of security deposits," *id.* at 13:27–28.

### H. Plaintiff Conducts Limited Discovery and Moves For Leave to Amend to Add Archstone Communities, LLC.

For the next several months Plaintiff Vagle conducted discovery pursuant to the state court's order. Based on this discovery, she moved for leave to file a Third Amended Complaint on August 23, 2013, re-naming Archstone Communities, LLC as the sole defendant and adding George Ponce as an additional named plaintiff. *See* Motion for Leave to Amend to File TAC (Ex. J).

The court, however, denied the motion, holding that it wasn't prepared "to find as a factual matter that she and the putative class have a factually well taken claim against the corporate affiliate Archstone Communities, LLC even though such party is not the stated lessor of the property giving rights to this dispute." Order at 2 (Oct. 8, 2013) (Ex. K). Instead, the court stated it was merely "willing to accept that the showing made [was] sufficient to allow the addition of Archstone Communities, LLC." *Id.* The court therefore

ordered Plaintiff to file "a new, alternative [Proposed] Third Amended complaint" that includes ASN Warner Center, LLC and "Mr. Ponce's nominal landlord." *Id.*

## I.   **Plaintiffs' Third and Fourth Complaints.**

Plaintiff Vagle filed a Third Amended Complaint on October 24, 2013; however, she inadvertently named ASN Long Beach Harbor, LLC rather than Archstone Long Beach, L.P., which was the entity identified on Plaintiff Ponce's lease.  The parties therefore stipulated to Plaintiffs filing a Fourth Amended Complaint, replacing ASN Long Beach Harbor, LLC with Archstone Long Beach, L.P.  *See* Stipulation (Ex. L).  The Fourth Amended Complaint was filed on November 21, 2013.

Pursuant to the state court's directions, the Fourth Amended Complaint alleges the possibility of two separate and distinct class actions against three separate defendants.  First, Plaintiffs define their principle class on behalf of all tenants who leased an apartment in California managed by Archstone Communities, LLC:

> *All persons*, except those who were evicted pursuant to Civil Code section 1161, *who leased an apartment in California managed by Defendant* [*Archstone Communities, LLC*], and were charged for apartment cleaning and painting and/or carpet cleaning or replacement in violation of Civil Code section 1950.5 within four years prior to the filing of Plaintiff VAGLE's original complaint up to final judgment.

4AC at ¶ 34 (emphasis added).  This class is alleged on the presumption that Plaintiffs will be able to prove that Archstone Communities, LLC is the tenants' "constructive landlord," making them legally responsible for the acts alleged in the complaint to all former tenants at apartment complexes managed by Archstone Communities, LLC in California.  *See* 4AC at ¶¶ 13–17.

In case this argument fails, the state court ordered Plaintiffs to allege, as an alternative, two subclasses—one against Defendant Archstone Long Beach by Plaintiff Ponce and one against Defendant ASN Warner Center, LLC by Plaintiff Vagle.  Unlike the

principle class, these two subclasses are confined solely to the properties owned by these two defendants:

> Defendant ASN Warner Center, LLC Subclass: "***All persons***, except those who were evicted pursuant to Civil Code section 1161, ***who leased an apartment at Archstone Warner Center***, and were charged for apartment cleaning and painting and/or carpet cleaning or replacement in violation of Civil Code section 1950.5 within four years prior to the filing of Plaintiff VAGLE's original complaint up to final judgment."

> Defendant Archstone Long Beach, LP Subclass: "***All persons***, except those who were evicted pursuant to Civil Code section 1161, ***who leased an apartment at Archstone Long Beach***, and were charged for apartment cleaning and painting and/or carpet cleaning or replacement in violation of Civil Code section 1950.5 within four years prior to the filing of Plaintiff PONCE's original complaint up to final judgment."

4AC at ¶ 35(a).

In other words, Plaintiffs are seeking either (1) a class encompassing all tenants who leased an apartment managed by Archstone Communities, LLC or (2) two subclasses, one encompassing all tenants who leased an apartment from Archstone Long Beach and one encompassing all tenants who leased an apartment from Archstone Warner Center.  In no situation would Archstone Communities, LLC be liable to members of the two subclass or Archstone Long Beach and ASN Warner Center, LLC be liable to the members of the principle class.

## J.   Archstone Long Beach Removes to Federal Court and This Court Grants Plaintiff's Motion to Remand

On December 6, 2013—i.e., 632 days after this case was originally filed in state court—Archstone Long Beach (and only Archstone Long Beach) removed this case to federal court under the Class Action Fairness Act of 2004 ("CAFA").  *See* Long Beach Removal (Ex. M).  To support its removal, Archstone Long Beach relied on the "declaration of Chris Jenkins, who oversees the processing of [Archstone Communities, LLC's] financial

7

information and electronic data.  Jenkins allege[d] that over the time in question approximately 69,000 tenants resided in Archstone Apartments; they 'paid security deposits of approximately \$34,000,000;' and they 'were charged approximately \$21,000,000 for apartment cleaning, painting and/or carpet replacement.' " *Vagle v. Archstone Communities, LLC*, No. CV 13–09044 RGK (AJWx), 2014 WL 463532, at *2 (C.D. Cal. Feb. 5, 2014). Archstone Long Beach's removal, however, "d[id] not list the number of tenants or approximate charges associated with [Archstone Long Beach, L.P.] or [Archstone Warner Center LLC] individually." *Id.*

Plaintiffs moved to remand, arguing that Archstone Long Beach could not rely on the amount in controversy for the Archstone Communities, LLC class to support its removal. The Court agreed, explaining

> [Archstone Long Beach, L.P.] calculates the amount in controversy by aggregating potential damages to all tenants who lived in any of the 70 multi-unit apartment complexes managed by [Archstone Communities, LLC].   However, in order to be potentially liable for damages to all former tenants of Archstone Apartments, [Archstone Long Beach, L.P.] would have to be jointly liable with [Archstone Communities, LLC], *see Libby v. City Nat'l Bank,* 592 F.2d 504, 510 (9th Cir.1978), or Defendants would need to be one legal entity and not separate entities. The Court is not persuaded that the facts alleged in Plaintiffs' Complaint are consistent with either joint liability or the existence of one entity.  Therefore, [Archstone Long Beach, L.P.] does not properly calculate its potential liability and does not satisfy the CAFA amount in controversy requirement.

*Vagle*, 2014 WL 463532 at *2.  Accordingly, the Court granted Plaintiffs' motion to remand on February 5, 2014.

On February 14, 2014, Archstone Long Beach filed a petition for permission to appeal this Court's remand order, which the Ninth Circuit summarily denied on April 10th.  *See* Order Denying Petition (Apr. 10, 2014) (Ex. N).

8

**L.** **The Day After the State Court Recognizes the Remand, Archstone Communities Re-Removes This Case to Federal Court.**

On May 6, 2014—one day after the state court recognized this Court's remand order—Archstone Communities re-removed this case to federal court based on a substantially similar (albeit more detailed) declaration of Mr. Jenkins. *See* Notice of Removal. The declaration states that during the class period: (1) 69,508 tenants resided in Archstone's apartment complexes in California; (2) they paid security deposits of $34,592,486; and (3) they were charged $21,564,452 for apartment cleaning, painting, and carpet cleaning/replacement. Second Jenkins Decl. at ¶7.

Additionally, Archstone Communities, LLC claims that it has not waived its right to remove because (1) "neither the Fourth Amended Complaint nor any prior pleading, motion or other document served on Communities (or any other defendant) has set forth ***any*** amount of monetary damages sought" and therefore (2) "Communities can remove this case under CAFA based on its own information outside the thirty-day time period for removal." Notice of Removal at ¶ 21. Plaintiffs again move to remand.

## III. LEGAL STANDARDS UNDER CAFA.

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 357, 377 (1994); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684–85 (9th Cir. 2006) (per curium) (citing cases). A defendant may remove a state civil action to federal court only if the case could have originally been filed in federal court to begin with. *See* 28 U.S.C. § 1441.

Consistent with their limited jurisdiction, federal courts apply a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curium) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–99)). This means that removal statutes are "strictly construed" against removal jurisdiction and "jurisdiction must be rejected if there is ***any doubt*** as to the right of removal in the first instance." *Id.* (emphasis added and citations omitted); *accord Duncan v. Stuetzle*, 76 F.3d

9

1480, 1485 (9th Cir. 1996) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." (citations and internal quotation marks omitted)); *see also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002).  It also means "the defendant ***always*** has the burden of establishing that removal is proper."  *Gaus*, 980 F.2d at 566 (emphasis added); *see also Abrego Abrego*, 443 F.3d at 684–85.

These standards apply with equal force to removals brought under CAFA.  CAFA grants district courts original jurisdiction over class actions with:  (1) at least 100 class members; (2) minimal diversity; and (3) an amount in controversy that exceeds $5 million. *See* 28 U.S.C. § 1332(d)(5)(B); *accord Lowdermilk v. U.S. Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) *overruled on other grounds by Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (Aug. 27, 2013).  " '[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction,' " *Id.* at 996  (quoting *Abrego Abrego*, 443 F.3d at 685)), and the "well-established presumption against federal removal jurisdiction" still applies,  *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009).

## IV.  ARGUMENT

### A.  Archstone Communities Has Repeatedly Waived Its Right to Remove This Two-Year Old Case to Federal Court.

Removing defendants have potentially three 30-day windows in which to remove a case to federal court:  (1) "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading," 28 U.S.C. § 1446(b)(1); (2) if it is unclear whether the case is removable from the face of the initial pleading, "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3); or (3) within 30 days after a defendant "discovers, based on its own investigation, that a case is removable," *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013).  The failure to timely remove within ***any*** of these three 30-day

10

windows acts as a waiver of the right to subsequently remove.  *Id.* at 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.").  As with all other requirements for removal jurisdiction, the removing defendant bears the burden of proving the timeliness of its removal and "[s]everal courts have noted that the thirty-day time limit for petitioning for removal will be strictly construed against a defendant." *Roberson v. Orkin Exterminating Co.,* 770 F.Supp. 1324, 1328 (N.D. Ind.1991) (citing cases).

> **1.    Communities Waived Its Right to Remove by Not Doing So Within 30-Days of Being Served With Plaintiff Vagle's First and Third Amended Complaints.**

Plaintiffs' Fourth Amended Complaint alleges that Archstone Communities has a systematic policy and procedure of always charging its California tenants for apartment cleaning, carpet cleaning, and painting at the end of every tenancy regardless of the actual condition of the apartment unit in violation of California Civil Code section 1950.5.  *See* Notice of Removal at ¶ 2.  Based on this allegation, Mr. Jenkins searched Archstone Communities' "computerized property management software system," which contains the data on how many tenants leased Archstone apartment units in California during the class period (69,508), how much they collectively paid in security deposits ($34,592,486), and how much they were collectively charged for apartment cleaning, painting, and carpet cleaning/replacement ($21,564,452).  *See* Second Jenkins Decl. at ¶ 7.

But the problem with Archstone Communities' removal is that for the past two years Plaintiffs have been consistently alleging the same underlying allegation that Archstone Communities is currently relying on to remove.  For example, on August 22, 2012, Archstone Communities was served with Plaintiff Vagle's First Amended Complaint, which—like the Fourth Amended Complaint here—alleged that Archstone Communities has a systematic policy and procedure of always charging its tenants for apartment cleaning, carpet cleaning, and painting at the end of every tenancy regardless of the actual condition of

11

the apartment unit.  FAC at ¶ 26 (Ex. G).  Despite this identical allegation, Archstone

Communities has failed to explain why it was unable to search its "computerized property

management software system"—like it did after being served with Plaintiffs' Fourth

Amended Complaint—and remove this case to federal court within 30 days of being served

with the complaint.  Consequently, its failure to remove was a waiver of its right to

subsequently remove.  *See*  28 U.S.C. § 1446(b)(3) (a removing defendant waives its right to

remove if it fails to remove "within 30 days after receipt by the defendant . . . of a copy of an

amended pleading, motion, order or other paper from which it may first be ascertained that

the case is one which is or has become removable").

Similarly—even if Archstone Communities hadn't waived its right to remove by

failing to do so within 30 days of being served with Plaintiff Vagle's First Amended

Complaint (it did)—Archstone Communities waived its right to remove by failing to remove

within 30 days of being served with Plaintiffs' Third Amended Complaint.  Like the First

and Third Amended Complaints, the Third Amended Complaint—which was served on

Archstone Communities on October 24, 2013—also alleged that Archstone Communities,

LLC has a systematic policy and procedure of always charging for cleaning and painting at

the end of every tenancy.  *See* Ex L.

Relying on *Roth*, 720 F.3d at 1125, Archstone Communities claims it wasn't obligated

to remove earlier because its current removal is "based on its own information outside the

thirty-day time period for removal."  Notice of Removal at ¶ 21.  But, as the putative class

members' previous landlord, Archstone Communities—unlike Plaintiffs—was always in

possession of the data needed to determine the class size and amount in controversy, and

were therefore always able to remove on the grounds they assert here.  And, while it is true

that a removing defendant is not required to "investigate the necessary jurisdictional facts

within the first thirty days of receiving an indeterminate complaint," *Harris v. Bankers Life

& Cas. Co.*, 425 F.3d 689, 693 (9th Cir. 2005), a defendant is still required to remove within

the statutory windows when it "is ***in possession*** of information suggesting that the amount in

controversy exceeds the jurisdictional minimum," *Banta v. American Medical Response Inc.*,

12

1  No. CV 11–03586 GAF (RZx), 2011 WL 2837642, at *6 (C.D. Cal. July 15, 2011)

2  (emphasis added).

3      The court in *Banta v. American Medical Response Inc.* explains this concept well.

4  There, the plaintiff filed a wage and hour class action against its employer "seeking to

5  represent a class of all California employees of Defendants during the applicable statute of

6  limitations period." *Id.* at *7. "As is common with wage and hour class actions, the

7  complaint did not allege the amount in controversy," the size of the class, or the class

8  members' average hourly rates. *Id.* at *2. Three years after the initial complaint was filed,

9  however, the employer removed under CAFA based on the plaintiff's admission that the

10  amount in controversy exceeded $5 million. *Id.* at *3. The court, however, held that the

11  employer waived its right to remove because it was required to remove within thirty days of

12  receiving the complaint "[g]iven that [it] purportedly kn[ew] how many persons [it]

13  employ[ed] and how much they [we]re paid," and was therefore "on notice that the amount

14  in controversy . . . was a very large sum of money." *Id.* at *7. Thus, *Banta* holds that a

15  defendant must remove within 30 days of receipt of the initial complaint when the

16  information needed to prove the amount in controversy is readily in the defendant's

17  possession.

18      *Roth* does not hold otherwise. There, the defendant supported CAFA's minimal

19  diversity requirement with a declaration from a putative class member that "stated that she

20  had moved to Nevada in late 2011 and that she intended to live in Nevada for the foreseeable

21  future." *Roth*, 720 F.3d at 1123. To get this declaration, the employer "***promptly***" contacted

22  its former employees in order to determine whether any of them had moved to a different

23  state, *id.* at 1125 (emphasis added), and then "***promptly*** filed a notice of removal," *id.* at

24  1126 (emphasis added). Based on these facts, the court held that the defendant had not

25  waived its right to remove. After all, a defendant should not be required to investigate

26  within 30 days the current residences of what could be thousands of putative class members

27  in order to determine whether CAFA's minimal diversity requirement is satisfied.

28

This case is different.  Unlike whether a former tenant has moved to a different state, an landlord "presumably know[s] how many [former tenants it has] and how much those [tenants paid in security deposits]."  *Banta*, 2011 WL 2837642 at *1.  Archstone Communities fails to explain how it is an exception to this presumption.  In fact, Archstone Communities confirmed that this information was readily available to it when it explained that its "investigation" consisted of nothing more than searching its "computerized property management software system" for the necessary data.  Second Jenkins Decl. at ¶ 5 (Feb. 2, 2014).

Additionally, it is important to note that this information was *never* in the hands of the Plaintiffs.  *Roth* explained that its holding was based entirely on the fact that a plaintiff should not "be able to prevent or delay removal ***by failing to reveal information showing removability*** and then objecting to removal when the defendant has discovered that information on its own."  *Roth*, 720 F.3d at 1225 (emphasis added).  "Here, [Archstone Communities is] in the best position to adduce evidence regarding" its former tenants.  *Id.* at 1130.  And there is no reason why it couldn't have come forward with this information sooner—or at the very least explained why it took over two years for this information to be obtained.  These facts make it clear that Archstone Communities "ignore[d] [Plaintiffs'] pleadings . . . from which removability [could] be ascertained and s[ought] removal only when it be[came] strategically advantageous for it to do so."  *Id.* at 1225.  Accordingly, it waived its right to remove, and remand should be granted.

## 2.   Archstone Waived Its Right to Remove By Not Removing Within 30-Days of Receiving Chris Jenkins' First Declaration.

Nevertheless, even if Archstone Communities didn't waive its right to remove by not removing within 30 days of receiving Plaintiff Vagle's First or Third Amended Complaints, Archstone Communities still waived its right to remove by failing to remove within 30-days of receiving a copy of Mr. Jenkins' first declaration, which it received early as **November 21, 2013**.  *See* First Jenkins' Decl. (Nov. 21, 2013) (Ex M).

14

As explained above, a defendant waives its right to remove if it fails to remove "within 30 days after receipt . . . , through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). "The type of document that constitutes an 'other paper' for the purposes of the statute is broad, reflecting courts' 'embracive construction' of the term." *Rynearson v. Motricity, Inc.*, 626 F.Supp.2d 1093, 1097 (W.D. Wash. 2009). For example, courts have had no trouble holding that "discovery documents, briefing, and deposition testimony all qualify as 'other papers' that can trigger the 30 day removal clock. *Id.* The only requirement is that the 'other paper' be 'one that is 'generated within the specific state proceeding which has been removed.' " *Id.* (quoting *Lozano v. GPE Controls*, 859 F.Supp. 1036, 1038 (S.D. Tex 1994)). Here, Mr. Jenkins November 21st declaration—which was used to support Archstone Long Beach's removal—qualified as an "other paper from which it [could] first be ascertained that the case is one which is or has become removable." As such, Archstone Communities was required to remove within 30 days of receiving the declaration. *See* 28 U.S.C. § 1446(b)(3).

To be sure, Plaintiffs attempted to meet-and-confer about this prior to filing their motion to remand. They asked whether Archstone Communities had "any response to [their] argument that Archstone Communities waived its right to remove by not removing within 30 days of receiving Mr. Jenkins' first declaration on November 21, 2013." Bickford Decl., Ex. A. at 2. They also asked why "Archstone Communities didn't remove concurrently with Archstone Long Beach" and whether this tactic was a "cognizant attempt to create a second opportunity at removal if Archstone Long Beach's removal failed." *Id.* Nevertheless, despite asking Archstone Communities for authority to support its removal, Archstone Communities merely stated that "the *Roth* case confirms that Plaintiffs' waiver argument is without merit." *Id.* But *Roth* confirms that a defendant *must* remove a case within 30 days of when it receives an "other paper"—such as a declaration—"from which it may first be ascertained that the case is one which is or has become removable." 720 F.3d at 1124. It also confirms that the failure to do so constitutes the waiver of the right to subsequently

remove. *Id.* at 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, ***provided that it has not run afoul of either of the thirty-day deadlines***." (emphasis added)). Therefore, since Archstone Communities did not remove within 30 days of receiving Mr. Jenkins' first declaration—like Archstone Long Beach did—Archstone Communities waived its right to remove

### 3. Archstone Communities Waived Its Right to Remove By Not Removing When Archstone Long Beach Did.

In addition to failing to remove within 30 days of receiving Mr. Jenkins' first declaration, Archstone Communities also waived its right by not removing concurrently with Archstone Long Beach. Although multiple removals are permitted under CAFA, "[a] second removal is [only] permissible when made on ***new grounds*** arising from subsequent pleadings or events." *Sys. Design Solutions Inc. v. Watch Sys. LLC*, No. CV 09-6871 PA (PJWx), 2009 WL 3245813, at *1 (C.D. Cal. Oct. 7, 2009) (emphasis added); *accord One Sylvan Rd. N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 63 (D. Conn. 1995) ("A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition when ***subsequent pleadings or events reveal a new and different ground for removal***." (emphasis added)). "Indeed, a second attempt at removal is justified only when there has been a 'substantial change in the nature of the instant case since it was last in this court.' " *Sys. Design*, 2009 WL 3245813 at *1 (quoting *One Sylvan*, 889 F. Supp. at 64). As the Seventh Circuit explained, multiple removals "could even lead to sanctions if nothing of significance changes between the first and second tries." *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 492 (7th Cir. 1999).

Here, there has been no change in the nature of the case and no subsequent pleadings or papers to provide a new basis for removal. In regards to CAFA, Archstone Communities' removal is based on the ***same facts*** (i.e., the declaration of Mr. Jenkins) that Archstone Long Beach's failed removal was based on. The only substantive difference is that now Archstone Communities is removing, rather than Archstone Long Beach. Archstone Communities fails

16

to cite any authority that such a tactic is permissible. *Lowdermilk*, 479 F.3d at 996 (noting that the removing party has the burden to show that removal is proper).

> **4.** **Archstone Communities Waived Its Right to Remove by Not Removing Within 30-Days of This Court's Previous Remand Order.**

Finally, even if Archstone Communities didn't waive its right to remove this case by failing to remove within any of the above mentioned time periods, it still waived its right by failing to remove within 30 days of this Court's previous order remanding this case back to state court. On February 5, 2014, this Court issued a transmittal letter with a certified copy of the remand order to Los Angeles County Superior Court, which automatically transferred jurisdiction from federal court back to state court. *See Seedman v. U.S. Dist. Court for the Cent. Dist. of Ca.*, 837 F.2d 413, 414 (9th Cir. 1988) (the "event that divests the district court of jurisdiction is the mailing of the certified copy of the order of remand to the clerk of the state court"); *MacLeod v. Dalkon Shield Claimants Trust*, 886 F. Supp. 16, 19 (D. Or. 1995) (same). However, rather than removing immediately upon remand, Defendants chose to wait until ***after*** the Ninth Circuit denied Archstone Long Beach's petition for permission to appeal before taking a second try at federal jurisdiction by removing on May 6, 2014 using Archstone Communities. This delay only furthers the fact that Archstone Communities has repeatedly waived its right to remove this case to federal court.

> **B.** <u>**Archstone Communities' Data Points Are Not Supported by Competent Proof.**</u>

Additionally, even if Archstone Communities didn't waive its right to remove (it did), the second declaration of Chris Jenkins is unsupported by the underlying documents and cannot be used to support jurisdiction. The Ninth Circuit has held that when a complaint's amount in controversy is unclear or ambiguous, the removing defendant has the burden of proving by a preponderance of the evidence that the jurisdictional threshold is met. *Guglielmino v. McKee Food Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)); *see, e.g., Abrego Abrego*, 443

17

F.3d at 638.  In order to satisfy its burden, a removing defendant is required to submit "competent proof."  *See Gaus*, 980 F.2d at 567.  Courts may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal" as well as allegations in the complaint.  *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  However, courts "cannot base [their] jurisdiction on [a] [d]efendant's speculation and conjecture."  *Lowdermilk*, 479 F.3d at 1002.  Rather, the defendant must set forth the "*underlying facts*" supporting each of its assertions that the amount in controversy exceeds the statutory minimum.  *Gaus*, 980 F.2d at 567 (emphasis in original); *see e.g., Garibay v. Archstone Communities LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013) (holding that a removing defendant may not rely on speculation and conjecture to support removal under the preponderance of the evidence standard).

Here, Chris Jenkins' declaration states, without any supporting documentation, that the class consists of "69,508 tenants," and that these tenants paid "$21,564,452,000 for apartment cleaning, painting and/or carpet cleaning or replacement" and paid "security deposits in the amount of $34,592,486."  Jenkins Decl. at ¶75.  Because these figures are unsupported, they are insufficient to prove jurisdiction.

For example, in *Green v. Staples Contract & Commercial, Inc.* No. CV08-7138 SVWJWJX, 2008 WL 5246051, at *4 (C.D. Cal. Dec. 10, 2008) the removing defendant submitted a single declaration stating that he "calculated that the number of workweeks in the putative class is no less than 78,256.72."   The court rejected the declaration because the "[d]efendant provid[ed] no explanation for how it reached this number.  Thus, absent more concrete evidence, it [was] nearly impossible to estimate with any certainty the actual amount in controversy."  *Id.* (internal quotation marks omitted).  Similarly, in *Trang Nguyen v. Nordstrom, Inc.*, No. SACV 11–01334 DDP (MLGx), 2012 WL 1956905, at *2 (C.D. Cal. May 30, 2012), the court faulted the removing defendant for submitting a sole declaration that was "based 'on the data available to [the defendant],' without any further explanations." These two cases demonstrate that a removing defendant cannot simply rely on a conclusory declaration that purports to provide information relevant to the amount in controversy;

18

rather, a defendant must provide—as they always must—the "*underlying facts*" supporting the data used to calculate the amount in controversy. *Gaus*, 980 F.2d at 567 (emphasis in original).

Like the declarations in *Green* and *Trang Nguyen*, Mr. Jenkins' declaration claims that he determined class-size and security deposit data through undisclosed and unidentified "data." However, this "data" is neither attached to Archstone Communities' removal papers, nor described in any detail within Mr. Jenkins' declaration. Archstone Communities didn't even both providing a compilation of this "data" for this Court's review (despite repeatedly being asked to do so by Plaintiffs). Worse yet, Mr. Jenkins is the "Vice President of Financial Planning for *Equity Residential*," which is not even a defendant in this case, making him incompetent to testify about the records of Archstone Communities. As explained in *Green* and *Trang Nguyen*, these deficiencies make it "nearly impossible" for the Court to estimate the actual amount in controversy, making remand appropriate. *Green*, 2008 WL 5246051 at *4.

Archstone Communities' failure to produce its actual business records and any detail on how it derived its data points is particularly inexcusable since it, as the landlord, has exclusive access to all the facts, records, and information necessary to support removal. *See Lowdermilk*, 479 F.3d at 1002 (removing defendant "is the only party with access to its . . . records" and must present these records to prove jurisdiction); *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) (holding that in ruling on a motion to remand, courts must consider "which party has better access to the relevant information"). The evidence that Archstone Communities could have provided, but chose not to, is exactly the kind of information needed to support removal. Instead, Archstone Communities asks that Plaintiffs and the Court take its word that the undisclosed and unattached "data" relied upon is complete and accurate. The Federal Rules of Evidence and CAFA, however, require far, far more.

/ / / /

/ / / /

C.   **The Court Should Award Plaintiffs the Fees and Costs Associated with Archstone Communities Frivolous Removal.**

Pursuant to 28 U.S.C. § 1447(c), a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Courts may award attorney's fees under section 1447(c) "where the removing party lacked an *objectively reasonable basis* for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).  As explained above, Archstone Communities lacks an objectively reasonable basis for removal.  It is merely re-removing this case, immediately after this court already remanded it back to state court, because it is unhappy with the Court prior decision.  Accordingly, the Court should award Plaintiffs' $12,501.16, which represents all fees and costs incurred as a result of Archstone Communities' frivolous second removal.  *See* Bickford Decl. at ¶ 5.

## V.   CONCLUSION

For the forgoing reasons, Archstone Communities waived its right to remove and therefore Plaintiffs' motion to remand should be granted.  Additionally, Archstone Communities lacked any "objectively reasonable basis for seeking removal."  Accordingly, the Court should grant Plaintiffs' motion to remand and award them $12,501.16  in attorneys' fees and costs.


Date:  May 23, 2014                    R. REX PARRIS LAW FIRM


                                       By:  /s/ John M. Bickford
                                            John M. Bickford
                                            Attorneys for Plaintiff and the
                                            Putative Class

20